IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREGORY BONAPARTE,
    Plaintiff
    v.
DEBBIE BECK, et al.,
    Defendants

Case No. 3:07-cv-294-KRG-KAP

Report and Recommendation

Recommendation

Defendants' motion to dismiss, which I believe should be treated in part as one for summary judgment, see docket no. 37, docket no. 48, docket no. 49, asserts in part that plaintiff, an inmate subject to the Prison Litigation Reform Act, failed to exhaust his administrative remedies before filing the complaint in this matter. I recommend the defendant's motion be granted and the Counts III through XII be dismissed for lack of exhaustion. I also recommend that Counts I and II be dismissed for failure to state a claim. See 28 U.S.C.§ 1915(e)(2)(B).

Report

Plaintiff is a federal prisoner serving a 360 month sentence imposed in April 1999 by the Southern District of Florida for controlled substances offense. He was an inmate at F.C.I. Loretto from June 2006 until his transfer to F.C.I. Coleman at the end of 2008. The Bureau of Prisons maintains a UNICOR production facility at the prison which manufactures a number of products, including cable assemblies for various pieces of military equipment. From September 21, 2006, until May 14, 2007, plaintiff worked as a solderer on the Cable 7 production line. Deborah Beck

was the foreman on his assembly line. There are conflicting accounts as to the reason why, but on May 10, 2007, plaintiff sought to transfer to the Cable 4 production line. On May 11, 2007, Beck denied plaintiff's requested transfer. The same day, Jay Litzinger, the assistant factory manager reassigned plaintiff to the position of orderly on the Cable 7 line. The job of orderly is less desirable than that of solderer. (There is nothing in the record to indicate that one production line is more desirable than the other.) On the afternoon of May 14, 2007, plaintiff sought a meeting with associate warden Jeffrey Bowe, the head of the UNICOR at the prison, and Litzinger and Bowe, to again request a transfer from Beck's production line and to complain about the job change. Litzinger ordered plaintiff to return to the line and clean, and plaintiff did so. When plaintiff was able to meet with Bowe, Bowe stated that he supported Beck and Litzinger's decisions.

The next morning, May 15, 2007, plaintiff handed Beck a grievance form complaining about Beck's decision and claiming it was retaliation for plaintiff's May 10 request for a transfer; plaintiff also handed Litzinger a grievance form complaining about his transfer of plaintiff from solderer to orderly and claiming it was retaliation for plaintiff's May 10 request for a transfer.

On May 14, 2007, Litzinger issued Incident Report 1599120, charging plaintiff with refusing Litzinger's order to return to the cable line and clean. It was given to plaintiff on

2

May 15, 2007, and plaintiff asserts that it was actually in retaliation for the grievance he had submitted earlier that day. Around noon, plaintiff prepared a second grievance asserting that claim which he handed to Litzinger, and a second grievance which he gave to Beck. About an hour later, in the afternoon of May 15, 2007, Beck issued Incident Report 1599198, charging plaintiff with disobeying an order she had given plaintiff the previous day not to bother the other workers on the production line. That afternoon, plaintiff was removed from the production area and taken to the RHU pending hearing on the disciplinary citations.

After a hearing on May 17, 2007, plaintiff was found guilty of the infraction charged by Beck and acquitted of the one charged by Litzinger. The sanction imposed on plaintiff was loss of his job, and plaintiff returned to the general population on May 23, 2007. The disciplinary sanction was upheld through the Bureau of Prisons appeal system.

Plaintiff's complaint alleges violation of his constitutional rights in the circumstances related to his removal from his UNICOR job at the prison. Count I and Count II claim plaintiff received a falsified accusation of misconduct from Beck which resulted in his dismissal from his UNICOR job (either soldering cable assemblies or as an orderly) because of what plaintiff calls "retaliation" by Beck for plaintiff's filing of a grievance requesting a job change.

3

Count III accuses Litzinger of filing a falsified misconduct with the same retaliatory animus. Count IV accuses Beck and Litzinger of racial discrimination because on one occasion an inmate of another race who requested a job transfer was not demoted or removed from his job. Count V accuses Beck and Litzinger jointly of retaliating against plaintiff. In Counts VI through XII, plaintiff claims that the defendants who are involved in the Bureau of Prisons disciplinary and grievance procedures, counselor Steven Jaso, the warden's secretary Lynne Fenchak (described in the initial complaint as M. Miller, see docket no. 7), Warden John Yost, and Scott Dodrill, the Bureau of Prisons Regional Director, failed to adequately investigate and remedy his grievances, conduct an adequate disciplinary hearing, or to resolve his appeal from the disciplinary proceedings.

Defendant's motion contends that the court cannot reach the merits of all but the first two counts because plaintiff did not use the available grievance procedures. It is defendant's burden to plead nonexhaustion as a defense and to prove that plaintiff did not exhaust the remedies available under that system. Jones v. Bock, 549 U.S. 199 (2007).

Exhaustion of a prison system's administrative remedy procedures is mandatory before an inmate files a federal lawsuit, because the Prison Litigation Reform Act of 1996 amended the Civil

Rights of Institutionalized Persons Act, 42 U.S.C.§ 1997e(a), to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion of remedies requirement is satisfied by substantial compliance with the existing remedial scheme, see Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir.2000), but exhaustion of remedies by an inmate must take place regardless of the adequacy of the administrative process. Booth v. Churner, 532 U.S. 731, 734 (2001). Failure to exhaust administrative remedies in accordance with the prison's requirements constitutes procedural default barring a subsequent civil claim in federal court. Woodford v. Ngo, 548 U.S. 81 (2006).

Defendant's evidence shows that plaintiff attempts to use the grievance system to complain about the alleged inadequacy of the disciplinary process or the grievance procedures did not exhaust any claims except those in Counts I and II. See docket no. 38, Vanessa Herbin-Smith Declaration at ¶¶ 5-6, and documents at Exhibit 1b, and Exhibit 1c. Plaintiff used the phrase "racial harassment" to describe Beck's motivation for issuing the misconduct in some of his appeals from the disciplinary sanction imposed on him but never submitted a grievance alleging racial

discrimination in Beck's denial of a transfer [1]. Plaintiff never grieved any of Litzinger's actions, Jaso's actions, Fenchak's actions, or Dodrill's actions. Plaintiff did grieve Yost's denial of plaintiff's request to overturn the disciplinary sanction against him, which plaintiff describes as Yost's refusal to conduct an adequate investigation into Beck's issuance of the incident report. However, plaintiff never appealed the denial of that grievance to the final level of the Bureau of Prisons' administrative process. Vanessa Herbin-Smith Declaration at ¶¶ 9-10. Because there is no genuine issue of fact about the inadequacy of plaintiff's exhaustion of administrative remedies, defendant's motion for summary judgment of counts III through XII must be granted.

As for the plaintiff's claims surrounding the removal itself in Counts I and II, plaintiff fails to state a claim. A prisoner alleging actionable retaliation in violation of the First Amendment must allege facts which permit an inference that (1) he was engaged in constitutionally protected conduct, (2) that defendant prison officials took some adverse action against him which would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) that there is a

---

1. If the accusation of "racial harassment" is more than the empty catchphrase it appears to be, it makes no sense at all, and plaintiff never explains how Beck's actions are consistent with any supposed animus against him because of his race.

6

causal link between the exercise of his constitutional rights and the adverse action taken against him. See e.g. Robinson v. Taylor, 204 Fed.Appx. 155, 157 (3d Cir. 2006).

The Court of Appeals for the Third Circuit has held that filing grievances in a prison administrative system stands on the same footing as filing a complaint in court for purposes of the first element of a retaliation claim. That does not mean, however, that anything plaintiff chooses to call a grievance or put on a grievance form is protected as if it were the filing of a grievance[2]. To illustrate with a persuasive example (though, since it is unpublished, not a binding precedent) from the Court of Appeals for the Third Circuit, in Brady v. Kawa, No. 99-3470 (3d Cir. slip opinion September 28, 2000)( per curiam), the circuit affirmed this court's dismissal of a First Amendment claim of a male prisoner, Brady, who claimed that he had been dropped from a therapeutic program "in retaliation for" making remarks critical of Kawa, a female prison employee who, Brady alleged, was wearing provocatively tight clothing. Just as plaintiff does, Brady could claim that his misconduct and all the disciplinary consequences

---

2. One reason for that is there is no substantive right to the existence of a grievance system. Burnside v. Moore, 138 Fed.Appx. 414, 416 (3d Cir.2005). Another is that, just as Fed.R.Civ.P. 11 allows a federal court to punish a litigant for abuse of the judicial system, a prison can punish abuse of the grievance system without infringing on the right to file grievances.

7

which followed, were sanctions imposed in retaliation for his protected speech. The Court of Appeals observed:

> [A] prisoner's right to free speech is limited by the legitimate penological interests of the prison. Such interests are obviously implicated by speech like Brady's which criticizes or otherwise undermines the authority of prison staff such as Kawa. See Goff v. Dailey, 991 F.2d 1437 (8th Cir.1993). Since Brady had no constitutionally protected right to the speech in question, his claim of retaliation is meritless. White v. Napoleon, 897 F.2d 103, 112 (3d Cir.1990).

slip op. at 4.

The question in this case can be phrased either as whether plaintiff's application for a transfer was a "grievance," or as whether plaintiff had a **constitutional** right to apply for a different job[3]. Either way, the answer is no. A grievance is a nonfrivolous complaint about some condition of prison life. To call plaintiff's request for a job transfer a grievance because it obviously means he was unhappy where he was transforms all prisoner statements (to pick a simple example, a request for an extra dessert) which could similarly convey dissatisfaction with the way things are into the grist for a federal lawsuit. That is absurd.

---

3. The District of New Jersey, in Ellis v. Rodriguez, 2005 WL 1475595, 9 (D.N.J.2005), has dismissed claims based on exclusion from prison employment as de minimis. I would not go that far, although in this case I would agree that the sanction imposed on plaintiff – loss of job – is insufficient as a matter of law to constitute "adverse action" as that term is used at the second element of a retaliation claim. The Courts of Appeal agree that a prisoner has no protected interest in a work assignment. Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986) (per curiam); Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir.1985).

Similarly, a prisoner has no right to any prison work assignment. Whether he puts his request on a form and calls it a grievance or not, plaintiff's request to change production lines is not protected activity. If Beck (or Litzinger) had out of the blue moved plaintiff to another line or changed his duties from solderer to orderly, it would have affected no legal right of plaintiff's. If Beck had fabricated an incident report because plaintiff offended her in some way, whether by failing to laugh at one of her jokes or by requesting a transfer, it would be equally petty, and equally beyond the scope of any remedy provided by the retaliation cause of action. The retaliation cause of action is designed to protect the rights of inmates to have access to the grievance system (if one is provided), not to police all interactions between inmates and corrections staff. Even if Beck's issuance of a disciplinary misconduct was directly caused by plaintiff's filing of a request for a job change, it does not fit into the limited scope of the retaliation cause of action. Counts I and II should be dismissed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: April 15, 2009

Keith A. Pesto,
United States Magistrate Judge

9

Notice by ECF to counsel of record and by U.S. Mail to:

    Gregory Bonaparte, Reg. No. 22786-018
    F.C.I. Coleman Low
    P.O. Box 1031
    Coleman, FL 33521